# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DERRICK HOWARD,**

    Plaintiff,

    v.                                                                                           Case No. 18-CV-925

**WILLIAM MCCREEDY and**
**JOHN/JANE DOES 1-20,**

    Defendants.

## REPORT AND RECOMMENDATION ON PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Derrick F. Howard, a Wisconsin state prisoner, is proceeding on claims that: (1) the defendants prescribed an ineffective course of treatment for his chronic foot injury and ignored podiatry specialists' recommendations regarding the type of boots he needs for his foot condition, in violation of the Eighth Amendment, and (2) the defendants issued him state boots in retaliation for filing this case. (Docket # 23.) U.S. District Judge Lynn Adelman has referred the case to me to handle all pretrial proceedings. (Docket # 19.) Before me now is Howard's amended motion for a preliminary injunction in which he seeks an order enjoining the defendants from preventing him from ordering ACG Air Max Boots. (Docket # 47 at 9.) For the reasons explained below, I recommend that Howard's motion be denied.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Fahenm-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that: (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012) (citing *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012)).

In the context of prisoner litigation, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

## FACTS

In June 2016, Dr. Corey Wesner examined Howard's foot and recommended that Howard "be allowed to purchase personal boots from an outside vendor just like the ones he currently has." (Docket # 22-1 at 3–4.)

On October 2, 2017, Dr. Thomas Sheridan examined Howard at Agnesian Healthcare, and diagnosed him with "chronic metatarsalgia, mainly on the right, with some

2

synovitis, capsulitis dorsal 1st metatarsal cuneiform on the right foot." (*Id.* at 6.) He noted that Howard had had the same shoes for three years and that they were "worn out and the forefoot and plantar aspect of the foot and sole are completely not providing any cushion for him." (*Id.*) Dr. Sheridan recommended "the same type of shoe boot that [Howard] wears now of a new type and the orthotic combination for now." (*Id.* at 7.) He did not recommend surgical intervention and he restated that "I still think he should try and stay with conservative efforts with orthotic and shoe management and we need to just give it a little bit more time." (*Id.*)

On April 16, 2019, Dr. Johnathan Stroebel examined Howard at Agnesian Healthcare. (Docket # 37-1 at 1-2.) Dr. Stroebel's Office Clinic Note states in part:

> The patient stated that he has a lot of issues with shoe gear. The state-issued boots are extremely uncomfortable for him. The shoes that he has ordered from the catalogue that are allowed at his facility have broken down quite a bit. He states that 4 year ago he had an ACG Air Max boot that he ordered from the Eastbay [sic]. He states that that was the most comfortable shoe gear that he had. He still has them, but they have broken down and are no longer effective.
>
> …
>
> PLAN: The patient was able to have relief with a pair of boots that he had several years ago. The patient should be allowed to order the ACG Air Max boots from the Eastbay company provided that that is allowed at the institution. The patient's orthotics were evaluated. They are showing fairly heavy wear. His previous casts are digitally stored and so a new pair of orthotics will be fabricated from that digital copy. Lastly, he was started on naproxen 500 mg, 1 tablet twice daily for 6 weeks. I would recommend that he follow up in 3 months if there is no improvement.

(Docket # 37-1 at 2.)

On October 16, 2019 (sixteen days after Howard filed his amended motion for preliminary injunction), Howard had a follow-up appointment with podiatrist Dr. Stroebel.

(Docket # 52 ¶ 17; Docket # 52-2 at 2-4.) Dr. Stroebel noted that Howard's physical examination was "fairly unremarkable." (Docket # 52-2 at 3.) Howard had "minimal arthritic changes to the medial aspect of the midfoot of the right foot," no inflammation in right or left foot, and no complaints of significant pain with palpation to the right or left foot. (*Id.*) Dr. Stroebel noted that the new orthotics conform well to Howard's feet. (*Id.*) Dr. Stroebel also noted that Howard's "orthotics have minimal wear and tear" and "did not even have an impression from his foot from use." (*Id.*)

Dr. Stroebel noted that Howard "still insists that this is primarily a shoe issue and desires to get the Nike ACG Air Max high top shoes." (*Id.*) Dr. Stroebel noted that Howard had his state-issued shoes with him because he was offsite, so he was unable to evaluate the shoes that Howard wears on a day-to-day basis. (*Id.*) Dr. Stroebel observed that Howard's state-issued boots had a "Silipos WonderZorb heel cushion" in both shoes, which provide additional cushioning of Howard's heels on both feet. (*Id.*) Dr. Stroebel conducted a more thorough neurological examination to check for numbness or tingling in Howard's feet and noted that Howard's sensation was intact to both feet. (*Id.*) Dr. Stroebel opined, "It is not entirely clear why this patient is complaining of pain to the degree his is experiencing. It may be a matter of perception." (*Id.* at 3–4.)

Dr. Stroebel identified two pairs of shoes from the prison vendor catalogues that would be acceptable for Howard. (*Id.* at 4.) They are both high-top shoes, one made by New Balance and the other by Rawlings. (*Id.*) Dr. Stroebel also stated:

> The patient states that he has tried just about every shoe in the catalog and they all break down within a matter of weeks. This could be a matter of him not wearing the proper sized shoes. Again, his shoes were not with him today for evaluation. The other factor that I am unaware of is his activity level. I do

4

not know how much he is on his feet and how much he is engaged in physical activity.

The patient complains that he has been to 3 doctors now and nobody is able to tell him what is wrong with his feet, and nobody has been able to resolve his pain. He was upset because the last doctor said that maybe he would need to have surgery. The last doctor that he saw, according to my records, was Dr. Thomas Sheridan in 2017. I reviewed Dr. Sheridan's notes and he did mention surgery, but did not specify what type of surgery would be recommended for this patient. Dr. Sheridan did state in his notes that he did not feel that surgery was appropriate for this patient. This patient has been dissatisfied with the care that I have provided with him and so he did express a desire to see another podiatrist. I am available to provide further care as needed. Further follow up will be scheduled at the discretion of the Kettle Moraine Correctional Institute health services unit. Follow up at this time is as needed.

(*Id.*)

Howard's current (October 2019) podiatry diagnoses are: (1) metatarsalgia, bilateral; (2) primary osteoarthritis, first metatarsal cuneiform joint, right foot; and (3) calcaneal bursitis, bilateral. (Docket # 52 ¶ 6, Docket # 52-2 at 2.) Metatarsalgia is pain and inflammation in the ball of the foot, which is the area between the arches and toes on the bottom of the foot. (Docket # 52 ¶ 7.) Primary osteoarthritis in the first metatarsal cuneiform joint, right foot can cause stiffness upon awakening, but improves with use. (*Id.* ¶ 9.) The joint can become stiff and tender with hours of standing and walking. (*Id.*) Calcaneal bursitis, bilateral, means inflammation of the bursa that causes heel pain. *(Id.* ¶ 10.)

Inmates at Kettle Moraine Correctional Institution are required to order shoes from one of three vendor catalogs: Union Supply, JL Marcus, or Access SecurePak. (Docket # 52 ¶ 13; Docket # 52-1 (vendor catalog shoes).) If an inmate has a special need for shoes that cannot be met by the shoes in the vendor catalog, the DOC has approved companies from which inmates may obtain custom shoes. (Docket # 52 ¶ 14.) The decision to send an

inmate for custom boots is made by an advanced care prescriber in conjunction with input from a podiatrist. (*Id.*)

Advanced Practitioner Nurse Prescriber (APNP) Tracy Thompson is Howard's primary care provider and is an advanced care prescriber. (*Id.* ¶ 5.) In APNP Thompson's medical judgment, Howard does not need custom made shoes. (*Id.* ¶ 15.) Howard received custom orthotics in the past. (*Id.* ¶ 16.) Orthotics can be placed in any pair of shoes. (*Id.*) APNP Thompson believes Howard should purchase shoes that are at least a half size larger than his normal shoe, and the shoes should be made of a softer, more stretchy material. (*Id.*) Howard received new custom orthotics on May 8, 2019. (*Id.* ¶ 17.)

Tom Pollard is the security director at Kettle Moraine. (Docket # 51 ¶ 2.) He is responsible for the security program for areas of the institution including control, center armory, tower, perimeter, program areas, visiting, reception, security training, mail and property. (*Id.* ¶¶ 2–3.) Pollard believes that allowing Howard to purchase shoes outside the DOC vendor catalogs would pose a risk to Howard's safety. (*Id.* ¶ 6.) Property, especially shoes, can be viewed as status symbols in prison. (*Id.* ¶ 7.) When one inmate has a pair of shoes that are significantly "better" or of higher quality than others, it places that inmate at risk of becoming a target to other inmates. (*Id.*) It is not uncommon for inmates to attempt to steal shoes that do not belong to them. (*Id.* ¶ 8.) Pollard avers that it is in the best interest of the safety of the institution to ensure that property is equitably spread amongst all inmates. (*Id.*)

## DISCUSSION

Howard contends that he is likely to succeed on the merits of his Eighth Amendment claim because three podiatrists recommended that he be allowed to wear ACG Air Max

Boots due to the palliative effect of the design of that shoe. (Docket # 47 at 5.) Howard states that for over three years, medical specialists have unanimously agreed that it is essential for Howard to have access to footwear that would relieve his pain. (*Id.*) According to Howard, the defendants have refused to implement a procedure through which Howard can access the required treatment prescribed by doctors. Howard also contends that he is likely to suffer irreparable harm in the absence of preliminary relief. (*Id.* at 6.) He states that his pain has worsened because he has been denied access to treatment for his basic medical needs and that he is currently waiting for an overdue follow-up examination and fears that he will require another round of surgery to ease the chronic pain he experiences from his medical condition.[1] Howard also contends that the balance of equities tip in his favor because the treatment of his condition is simple, effective and medically uncontroversial and because the DOC has the authority and discretion to allow inmates to deviate from the approved vendors list for medical reasons.

The defendant contends that Howard is unlikely to succeed on the merits because Dr. Stroebel, his current treating podiatrist, believes there are shoes in the DOC-approved vendor catalogs that meet Howard's medical needs and his current primary care provider, APNP Thompson, agrees. (Docket # 50 at 10.) The defendant contends that Howard is unlikely to suffer irreparable harm because, as the record of his most recent podiatry appointment shows, he is not experiencing significant pain or inflammation. The defendant contends that the balance of equities weighs in his favor because the desired shoes are not medically necessary and they present a security risk to Howard, as well as to other inmates

---

[1] Howard filed his motion before his October 16, 2019 appointment with Dr. Stroebel.

and staff, and because Howard has other options, i.e., the two pairs of shoes that Dr. Stroebel recommended.

To sustain a claim of deliberate indifference to a serious medical need, Howard must show "that he had a serious medical need and that a defendant was deliberately indifferent to it." *Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006). The inquiry into the subjective, deliberate indifference prong asks whether "the prison official acted with a sufficiently culpable state of mind." *Id.* (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)). A prison official has a sufficiently culpable state of mind when the official "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Id.* (quoting *Walker*, 283 F.3d at 1037). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). At the same time, the fact that a plaintiff received some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

The record is inconsistent regarding the type of boot Howard wants. In 2012, Howard ordered "Nike Air Max Ltd" boots from Eastbay and in 2013, he ordered "Nike ACG Manoa" boots from Eastbay. (Docket # 54 at 5; Docket # 55 at 17-18.) Howard's amended affidavit states that Nike offers a cheap hiking shoe/boot, the Nike ACG Manoa, which has proven to be the most effective solution to manage the pain from his foot injury. (Docket # 55 at 19-20.) Howard states that "[t]hese boots were helpful in reducing the pain he experienced in his feet" and "[t]hese are the same types of boots he is seeking purchase –

again through Eastbay – pursuant to the recommendation of Dr. Sheridan and Dr. Stroebel." (Docket # 54 at 5.)

It is unclear which boot was recommended for Howard at his June 2016 and October 2017 medical appointments. And while in April 2019, Dr. Stroebel recommended that Howard be allowed to order the ACG Air Max boot from Eastbay "provided that that is allowed at the institution," Dr. Stroebel notably did not recommend that Howard be provided an exception to purchase the boots if it was not allowed. Finally, in October 2019, Dr. Stroebel identified two pairs of high-top shoes from the prison vendor catalogs that would be acceptable for Howard. Neither Dr. Stroebel or Howard's current primary care provider, APNP Thompson, believe that Howard needs custom made shoes from a vendor outside the three DOC-approved vendor catalogs. While Howard states that he has ordered four pairs of shoes from the allowed vendors since 2016 and that they were not good quality shoes, Howard does not state that he has tried the New Balance or Rawlings high-top shoes that Dr. Stroebel recommended.

Howard is not entitled to dictate the terms of his medical care. *See Harper v. Santos*, 847 F.3d 923, 928-29 (7th Cir. 2017) (citing *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011)); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Moreover, disagreement among medical professionals alone does not establish deliberate indifference. *Harper*, 847 F.3d at 927. Howard has failed to establish that he is likely to succeed on the merits and he has not shown that he will suffer irreparable harm without an injunction. Rather, the record shows that he has received meaningful and ongoing assessment, treatment, and recommendations regarding his medical needs. For these reasons, I recommend denying Howard's motion for preliminary injunction.

**NOW, THEREFORE, IT IS RECOMMENDED** that Howard's motion for preliminary injunction (Docket # 47) be **DENIED**.

Howard's attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2), which allow Howard to file written objections to my recommendation within fourteen days of service of the recommendation. Howard's failure to timely file objections with the district court shall result in a waiver of his right to appeal.

Dated at Milwaukee, Wisconsin this 10th day of January, 2020.

BY THE COURT:

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge